IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

AGUILERA, *et al.*,

        Plaintiffs,                                  Case No. 13-CV-1245

        v.

WAUKESHA MEMORIAL HOSPITAL, INC., *et al.*,

        Defendants.

**PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF THEIR MOTION FOR CONDITIONAL CLASS CERTIFICATION AND COURT FACILITATED NOTICE**

**INTRODUCTION**

      The Plaintiffs have brought forth admissible evidence, through declarations, deposition testimony, as well as documentary evidence, confirming that a common factual nexus ties them to the classes they seek to represent. The Named Plaintiffs and all members of both putative classes were subject to Defendants' automatic meal period deduction policy <u>and</u> were suffered and permitted to perform off-the-clock work as a result of that policy. This alone is sufficient to support the Plaintiffs' burden at conditional class certification.

      Rather than addressing the Plaintiffs' position head on, Defendants have attempted to redefine the Plaintiffs' burden to have the class conditionally certified. However, in this District, at the conditional class certification stage, the Court must only decide whether a factual nexus connects the Plaintiffs' claims with those of the putative class members. Because Plaintiffs have met this burden, Plaintiffs respectfully request that their motion be granted and that Court Approved Notice be sent to members of the putative collective classes.

1

## RELEVANT FACTS

The parties conducted their Fed. R. Civ. P. 26(f) conference on January 14, 2014. (Declaration of Attorney Summer H. Murshid in Support of Plaintiffs' Reply Memorandum in Support of their Motion for Conditional Class Certification and Court Facilitated Notice (Murshid Dec.) at ¶2.) The Court held its initial pretrial conference in this matter on February 5, 2014. (dkt. #19.) In its pretrial conference order, the Court set the Plaintiffs' deadline to file a motion for conditional class certification as April 18, 2014. (dkt. #19.) The Court granted the parties' joint Stipulation to Amend the Scheduling Order, as necessitated by a medical emergency in Plaintiffs' Counsel's family and Plaintiffs filed their Motion for Conditional Certification pursuant to the Amended Scheduling Order on May 9, 2014. (dkt. #31.) Dispositive motions are due October 24, 2014 and discovery remains open for another 9 months, until March 15, 2015. (dkts. #17, 19.)

Since the discovery period opened, Plaintiffs have served written discovery requests which consisted of 7 Interrogatories and 23 Requests for Production for each of the proposed classes. (Murshid Dec. ¶3.) The discovery requests were tailored to obtain information related only to the hospital wide computer based systems, training, policies and practices that applied to the respective classes. (Murshid Dec. ¶6.) In response, Defendants have provided limited production relating primarily to the Named and opt-in Plaintiffs and some hospital-wide policies and trainings. (Murshid Dec. ¶4.)

Plaintiffs also took Defendants' Fed. R. Civ. P. 30(b)(6) Deposition which was limited to the "policies and practices" applicable to the proposed housekeeping and CNA classes. (Murshid Dec. ¶6.) Plaintiffs have not conducted discovery relating to any other class members but plan to do so during the remaining 9 months that discovery is open. (Murshid Dec. ¶7.)

## ARGUMENT

**I.   The Plaintiffs' Burden is to Show a Factual Nexus Between the Named Plaintiffs' Claims and Those of the Members of the Putative Classes.**

2

Notice in FLSA cases is sent early in the litigation because the statute of limitations is not tolled for members of the putative 29 U.S.C. § 216(b) class until they file a consent form with the court. *Lynch v. United Servs. Auto Ass'n*, 491 F. Supp.2d 357, 371 (S.D.N.Y. 2007) ("Prompt court action is needed because potential opt-in plaintiff's claims are in risk of being extinguished by the running of the statute of limitations."). As such, to protect the expiring claims of putative class members, Courts rule on conditional class certification early in the case – prior to completion of discovery. This is so because most of the putative class members are unaware of their right to join the action while their claims continue to expire under the running statute of limitations. *Kerce v. West Telemarketing Corp.*, 575 F. Supp. 2d 1354, 1358 (S.D. Ga. 2008).

While some Courts have granted conditional certification based on allegations in the complaint alone[1], the more common approach has been to grant conditional certification based on the allegations in the Plaintiff's complaint along with the affidavits or declarations submitted by the Plaintiff, after some discovery has been completed. *Fosbinder-Bittorf v. SSM Health Care of Wisconsin, Inc.*, Case No. 11CV592, 2013 U.S. Dist. LEXIS 91617 (W.D. Wis. 2013)(granting conditional certification after two and a half months of discovery); *Berndt v. Cleary Building Corp.*, Case No. 11CV791, (W.D. Wis. Jan. 24, 2013)(granting conditional certification after 2 months of discovery); *Brabazon v. Aurora Health Care, Inc.*, Case No. 10CV714, 2011 U.S. Dist. LEXIS 37057 (E.D. Wis. 2011)(granting conditional certification after 3 months of discovery); *Sjoblom v. Charter Commuc'ns., LLC*, 571 F. Supp. 2d 961 (W.D. Wis. 2008).; *Kelly v. Bluegreen Corp.*, 256 F.R.D. 626 (W.D. Wis. 2009); *Sharpe v. APAC Customer Servs.*, Case No. 09CV329, 2010 U.S. Dist. LEXIS 1671, *12 (W.D. Wis. 2010).[2]

---

[1] *See Allen v. Marshall Field & Co.*, 93 F.R.D. 438 (N.D. Ill. 1982); *Neagley v. Atascosa Cnty., EMS*, 2005 U.S. Dist. LEXIS 230 (W.D. Tex. 2005); *Belcher v. Shoney's, Inc.*, 927 F. Supp. 249, 251 (M.D. Tenn. 1996).
[2] All unpublished opinions are attached to Murshid's Dec., ¶11.

3

Because a plaintiff's motion for conditional certification occurs early in the case, and because the purpose of conditional certification is to inform unaware class members of their opportunity to join (class members are not bound if they do not join as they are in a Fed. R. Civ. P. 23 class) courts apply a lenient standard. *Patton v. Thompson Corp.*, 364 F. Supp. 263, 267 (E.D.N.Y. 2005). The "focus of the inquiry is not whether there has been an actual violation of law but rather on whether the proposed plaintiffs are similarly situated … with respect to their allegations that the law has been violated." *Brabazon*, 2013 US Dist. LEXIS 37057 at *6 (E.D. Wis. 2013)(citing *Young v. Cooper Cameron Corp.*, 229 F.R.D. 50,54 (S.D.N.Y. 2005)). The Court conducts its final and more exacting similarly situated analysis after notice has been sent to the class, class members have had a chance to join the action, and discovery has been completed on the opt-in Plaintiff's claims. *Kelly*, 256 F.R.D. at 629.

The Plaintiffs have met this burden. They have presented the declarations of the Named Plaintiffs and opt-in Plaintiff. (dkts. ##33-35).[3] These declarations confirm that they similarly were suffered and permitted to work during unpaid meal periods under a uniform automatic meal period deduction policy. (Deposition Transcript of Evangelina Aguilera ("Aguilera Dep."), dkt. # 36-8, at 50:1-13; Deposition Transcript of Angelina Nunez ("Nunez Dep."), dkt. # 36-9, at 25:6-16; Declaration of Evangelina Aguilera ("Aguilera Decl."), dkt. # 33, at ¶¶ 5-15; Declaration of

---

[3] Defendants objections to Plaintiffs' declarations are without merit. With regard to the first objection, Plaintiffs conversations with supervisors fall within Fed. R. Evid. 801(d)(2)(D) and are therefore not hearsay. ("A Statement is not hearsay if …[t] statement is offered against a party and is … a statement by the party's agent or servant concern a matter within the scope of the agency or employment, made during the existence of the relationship…"). With regard to the second objection, statements regarding the declarants own observations of and interactions with other employees are clearly supported by the declarant's personal knowledge. Defendants' argument that these observations are of no value because the names of the employees aren't included is simply without merit. The fact that Plaintiffs personally observed how the common policies and practices were applied to fellow employees is certainly relevant and valuable in determining whether Plaintiffs have properly alleged the existence of a common uniform policy that applied to themselves and members of the putative classes.

Angelina Nunez ("Nunez Decl."), dkt. # 34, at ¶¶ 5-15; Declaration of Angeles Gonzalez ("Gonzalez Decl."), dkt. # 35, at ¶¶ 5-15.)[4] Beyond this, and exceeding the Court's typical requirements at conditional certification, Plaintiffs have also presented their own deposition testimony and the deposition testimony of Defendants' Fed. R. Civ. P. 30(b)(6) Designees confirming these uniform practices. (dkts. ##43-46.)

Defendants devote a large portion of their argument attempting to persuade the Court to deviate from the lenient conditional certification standard, which this Court, and courts around the country, have consistently applied. Defendants' arguments ignore the overwhelming weight of authority declining to determine more than whether the Plaintiffs are able to show a factual nexus between their claims and the claims of the classes they seek to represent at the conditional class certification stage. As the Plaintiffs' evidence exceeds what is required by standard for conditional class certification adopted by this Court, Plaintiffs request that notice be sent to putative class members to allow them opportunity to opt-in to this action.

### A. This Court, and the Vast Majority of Courts Around the Country, Approach Class Certification Under the FLSA in Two Stages.

It is well established that the Eastern and Western Districts of Wisconsin apply a two stage analysis when evaluating conditional certification and do not apply heightened second stage analysis until a motion for decertification has been filed. *Fosbinder-Bittorf*, 2013 U.S. Dist. LEXIS 91617 (W.D. Wis. 2013); *Berndt*, Case No. 11CV791, (W.D. Wis. Jan. 24, 2013); *Brabazon,* 2013 US Dist. LEXIS 37057 at *6 (E.D. Wis. 2013); *Adair v. Wisconsin Bell*, Case No.08CV280; *Austin,* 232 F.R.D.601, 605; *Kelly*, 256 F.R.D. 629; *Witteman v. Wisconsin Bell,*

---

[4] Plaintiffs appreciate Defendants' reference to the typo contained in the declarations submitted with Plaintiffs' original Motion for Conditional Certification and Court Facilitated Notice. Attached as Exhibit 2 to Murshid's Dec. are the revised declarations which properly reference 28 U.S.C. § 1746 as opposed to 29 U.S.C. §1746, which of course, does not exist.

5

*Inc.*, Case No. 09-CV-440-vis, 2010 U.S. Dist. LEXIS 8845, *3 (W.D. Wis. 2010). At the first stage, "a plaintiff must demonstrate some factual nexus that connects her to other potential plaintiffs as victims of an unlawful practice." *Sharpe*, 2010 U.S. Dist. LEXIS 1671 at *12. It is "at the decertification stage [that] the court determines whether the plaintiffs are in fact similarly situated to those <u>who have opted in</u>." *Austin*, 232 F.R.D. at 605 (emphasis added).

Defendants have asked this Court to adopt an intermediate standard at the conditional certification stage. Neither the United States District Court for the Western District nor the Unites States District Court for the Eastern District of Wisconsin have ever applied the "intermediate standard" at the conditional certification stage. In fact, most courts have flatly rejected altering the standard at the conditional certification stage for the reasons discussed above. Specifically, because discovery is not complete, the court is not in a position to make a final similarly situated determination as individuals who have not had opportunity to opt-in to the class. *DeMarco v. Northwestern Mem'l Healthcare,*, Case No. 10C397, 2011 U.S. Dist. LEXIS 88651 (N.D. Ill. 2011) (Rejecting request for heightened standard of review where discovery was limited to designees for the purpose of determining its policies and practices regarding the thirty-minute meal period deductions.); *Toure v. Central Parking Sys.,* 05 Civ. 5237, 2007 U.S. Dist. LEXIS 74056 at *7-8 (S.D.N.Y. 2007) (explaining that the lenient standard applied although some discovery had occurred); *Mueller v. CBS, Inc.,* 201 F.R.D. 425 (W.D. Pa. 2001) (rejecting more stringent standard for conditional certification because "it is impossible to determine whether the class members are similarly situated or not" before notice has been provided and Plaintiffs opt-in).[5]

---

[5] *See also Perry v. National City Mortg. Inc.*, Case No. 05-CV-891-DRH, 2007 U.S. Dist. LEXIS 45115 at *8 n.3 (S.D. Ill 2007); *Kautsch v. Premier Commc'ns*, 504 F. Supp. 2d 685, 689 (W.D. Mo. 2007) (applying notice- stage standard where parties had conducted seven months of discovery); *Gieseke v. First Horizon Loan Corp.,* 408 F. Supp. 2d 1164, 1165-67 (D. Kan. 2006) (rejecting application of second stage analysis despite "extensive discovery"

6

Defendants can offer no support for the proposition that a heightened standard should apply in this case, as the Eastern District of Wisconsin applies a heightened standard only after Defendants have moved for decertification, consistent with courts throughout the Country. Further, Defendants' suggestion that substantial discovery has occurred is disingenuous at best. Plaintiffs' discovery requests and deposition questions thus far have related only to those facts, policies and procedures which applied similarly to Plaintiffs and the proposed classes. (Murshid Dec. ¶¶3-6). Between the 26(f) conference and the conditional certification deadline, Plaintiffs had less than 4 months to conduct discovery and the discovery period remains open for another ten months. (dkts. ##17, 19).

This Court, along with the majority of Courts throughout the county, has adopted a two stage approach to conditional certification. The discovery period had only been open for 3.5 months at the time Plaintiffs filed their Motion for Conditional Certification and remains open for almost a full more year. For these reasons, first stage analysis applies. As such, the Court need only determine whether a common factual nexus binds the claims of the Named Plaintiffs and the putative class members.

### B. Arguments Relating to the Compensability of Meals Breaks are Inappropriate at the First Stage of Conditional Certification.

Because this case is properly analyzed at the first stage inquiry of conditional certification, Defendants' attempts to introduce arguments based on the merits of this claim, such as the "predominant benefit" test, for determining whether meal periods are compensable under the FLSA, are inappropriate. Defendant Aurora Healthcare asserted identical claims in *Brabazon*, U.S. Dist. LEXIS 37057, at *13-14 (E.D. Wis. 2011). Judge Stadtmueller, in rejecting Aurora's reliance on the same case Defendants cite, *Leahy v. City of Chicago*, 96 F.3d 228, n.2 (7th Cir.

---

because discovery was not complete and the Court could not "conclude that the evidence is representative of what plaintiff would present given further discovery," and because the scheduling order contemplated a two-step process).

7

1996), explained that the "conditional certification inquiry should not delve into the merits of a plaintiffs claim and [t]he debate over the compensability meal breaks is better left for another day.). *Brabazon,* U.S. Dist. LEXIS 37057, at *13-14. The same reasoning is applicable in this case where a decision on the compensability of time Plaintiffs and class members spend carrying, monitoring and responding to communication devices is not before this Court. That is a question on the merits and better addressed on "another day."

### C. Sufficient Desire to Participate in Litigation from Members of the Putative Classes is Not Required for Conditional Certification in the Seventh Circuit.

Defendants argue that Plaintiffs must produce evidence of a sufficient interest in the litigation on the part of putative class members. However, courts in the Seventh Circuit have squarely rejected this argument. In *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 780 (N.D. Ill. 2007), the Court addressed this issue directly, explaining:

> Defendant's argument that Heckler must produce evidence that other employees wish to join the class before the class notice may be sent puts the cart before the horse. Though a limited number of courts appear to have adopted this procedure, *see, e.g., Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562 (11th Cir. 1991); *Lance v. The Scotts Co.,* No. 04 C 5270, 2005 U.S. Dist. LEXIS 14949, 2005 WL 1785315 (N.D. Ill. July 21, 2005), there is no controlling precedent in this circuit. Defendants' proposed rule does not make sense. <u>It would essentially force plaintiffs or their attorneys to issue their own form of informal notice or to otherwise go out and solicit other plaintiffs. This would undermine a court's ability to provide potential plaintiffs with a fair and accurate notice and would leave significant opportunity for misleading potential plaintiffs</u>. That aside, the logic behind defendants' proposed procedure -- requiring Heckler to show that others want to join in order to send them notice asking if they want to join -- escapes the Court. Requiring a plaintiff to make an advance showing that others want to join would undermine the "broad remedial goal" of the FLSA. *See Hoffmann-La Roche, Inc. v. Sperling,* 493 U.S. 165, 173, 110 S. Ct. 482, 107 L. Ed. 2d 480 (1989) (ADEA case; discussing the FLSA).

*Id* at *4-5 (emphasis added)*; See also*, *Garcia v. Salamanca Group, Ltd.*, 2008 U.S. Dist. LEXIS 22852, at *7-11 (N.D. Ill. 2007)). This case is at the early stages of litigation and putative class

8

members have not been provided with an opportunity to opt-in to the case because they have yet to be notified. SCR 7.3(a) (2011-12)(Plaintiffs' counsel is prohibited from soliciting potential clients). To deny conditional certification on this basis defeats the entire purpose of the first stage of conditional certification, which is to notify putative class members of the litigation. Accordingly, Defendants' claims that conditional certification should be denied for lack of sufficient interest should be denied.

## II. The Plaintiffs Have Met Their Burden to Show A Factual Nexus Ties Their Claims to Those of the Putative Classes.

Just as this Court held in *Brabazon*, Plaintiffs' evidence, is sufficient to create a reasonable inference that, for all housekeepers and certified nursing assistants "subject to the automatic meal break deduction, Defendants ran afoul of the FLSA by failing to ensure" that housekeepers and CNAs "were compensated for all work completed, even the inactive tasks of monitoring a communication device and remaining available to readily respond to emergency and non-emergency situations." *Brabazon*, U.S. Dist. LEXIS 37057, at *14-15 (E.D. Wis. 2011). For the reasons outlined below, Plaintiffs have met their burden to show that a factual nexus ties them to the claims of the putative class members they seek to represent.

### A. Defendants' Common Policies and Practices Suffered and Permitted Housekeepers and Certified Nursing Assistants to Work Uncompensated.

#### i. Defendants' Own 30(b)(6) Witnesses and Declarations Confirm Plaintiffs' Allegations That the Common Policies Applicable to Named Plaintiffs and Members of the Putative Classes Required Off the Clock Work.

Defendants claim that the evidence does not show a common policy or plan that unlawfully affects a group of similarly situated employees. This claim is incredible, considering that Defendants do not dispute, at any point in their brief, the fact that housekeepers and certified nursing assistants:

9

(1) Must carry hospital assigned communication devices at all times, even during unpaid meal periods;
(2) Must monitor hospital assigned communication devices at all times, even during unpaid meal periods;
(3) Must respond to **all** calls or pages received on those communication devices, even during unpaid meal periods; and
(4) Must carry communication devices that may not be taken off the premises at any time.

Defendants' own Fed. R. Civ. P. 30(b)(6) Deponents testified that these requirements apply to every housekeeper and every CNA. (Thornburg Dep., dkt. # 36-7, at 65:1-7, 75:3-11, 77:16-19, 81:5-19, 96:13-16, 83:9-22; Smeaton Dep., dkt. # 36-9, at 20:21-21:8, 44:17-22, 38:18-39:2, 40:18-41:17, 46:16-47:8.) In addition, every single one of Defendants' declarants confirm these practices by stating that if they are contacted via phone or pager while on break, [they are] able to advise the supervisor that [they are] on break." (dkts. ## 39-1 – 39-7; 39-10 – through 39-28.) This could only be the case if they are monitoring, carrying and responding to the communication device at all times, even during unpaid meal periods. Furthermore, at least a portion of Defendants' declarants also confirm that they are asked to leave their breaks by supervisors who contact them via phone and pager. (dkts. ## 39-4, 39-6, 39-19, 39-23).). This testimony affirms the declaration and deposition testimony of the Named Plaintiffs and declaration of the opt-in Plaintiff.

At the same time, Defendants confirm that they apply a meal deduction policy that automatically deducts 30 minutes of pay from every housekeeper and every CNA unless they affirmatively cancel the deduction. (Defendants Reply Brief, dkt. 38, pg. 3). Under this auto-deduction policy, housekeepers and CNAs who carry, monitor and respond to communication devices are performing uncompensated work. Plaintiffs' evidence, contrary to Defendants' assertions, clearly demonstrates the existence of common policies that apply to Plaintiffs and

10

members of the putative classes and is sufficient to warrant conditional certification. Defendants' evidence adds further support to these facts.

### ii. Merely Allowing Housekeepers and CNAs to Cancel Interrupted Meals is Not Sufficient to Comply with the FLSA.

Throughout its brief, Defendants express their conviction that an automatic meal deduction policy *alone* does not violate that law. (See Defendant's Brief at p.14-15). Defendant misunderstands both Plaintiffs' liability theory and its own obligations under the FLSA. As stated in the Plaintiffs' moving brief,

> [I]t is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R § 785.13. Where Defendants maintain an auto deduction policy, and individuals work during unpaid time, Courts have commonly found that class treatment is appropriate. Indeed, some courts have even conditionally certified collective actions based solely on the theory that these cancellation procedures inappropriately shift the employer's responsibility to ensure compensation for work suffered or permitted to the employee. *See Brabazon*, U.S. Dist. LEXIS 37057, at *13-14 (E.D. Wis. 2011)(citing *Kuznyetsov v. W. Penn Allegheny Health Sys.*, No. 09CV379, US. Dist. LEXIS 47163, at 14-15( W.D. Pa., June 1, 2009); *Camesi v. Univ. of Pittsburgh Med. Ctr.,* No. 09-85J, US. Dist. LEXIS 40571, 2009 WL 1361265, at *4 (W.D. Pa, May 14, 2009)). Even in *Fengler v. Crouse Health Found., Inc.,* 595 F. Supp. 2d 189, 195 (N.D.N.Y. 2009), which Defendant relies upon, the Court conditionally certified the class, stating that "[i]t is the failure of an employer to compensate employees who work through those unpaid meal periods, and to police and oversee hourly workers and their supervisors to ensure

11

that when working through or during unpaid meal periods they are compensated, that potentially runs afoul of the Act. *Id.*[6]

This case is no different. Defendants maintain an automatic meal period deduction policy. The putative class members uniformly are subject to this policy. Additionally, under said policy, Defendants suffer and permit its housekeepers and certified nursing assistants to perform off the clock work without compensation. Defendants do not avoid liability simply by having a policy under which the burden to ensure pay for all hours worked is shifted to employees.

> **B. Individual Variations Between Members of the Putative Classes Do Not Weigh Against Conditional Certification.**

Defendant submits evidence that appears to show that some employees cancel meal periods. The significance of these cancellations, however, is never fully explained by Defendant. At best, the argument of alleged individual differences between housekeepers and certified nursing assistants is appropriate at the decertification stage. However, allegations of variations in the number of meal periods cancelled by putative class members do not weigh against conditional class certification.

---

[6] The only other case upon which Defendants rely to support their claim that it is sufficient that the hospital has promulgated policies which are meant to compensate hourly employees if they miss their meal breaks is *Saeleen v. Waste Management Inc.*, Civ. No. 08-4959(PJSJJK), 2009 U.S. Dist. LEXIS 49891 (D. Minn., June 15, 2009). In that case, the Northern District of Minnesota relied on the governing precedent in that District which requires Plaintiffs to establish evidence of a "policy to violate the policy that exists." *Id.* at 15. In fact, Courts in this District have explicitly rejected this requirement. *See DeMarco*, 2011 U.S. Dist. LEXIS 88651 (N.D. Ill. 2011) *(*granting conditional class certification where Defendant argued it's meal period cancellation policy required a showing by Plaintiff of a policy to violate that policy and finding it sufficient that the "plaintiff shows that the employer had a practice of violating, disregarding, or failing to enforce that policy."). *Id.* at *9. *See also Kimbell v. Dynamic Strategy, Inc.*, 2009 U.S. Dist. LEXIS 50008(granting conditional class certification in an automatic meal period deduction case because "although the Defendant had a written policy in place to ensure that time records were edited to reflect missed meal periods, this policy was ignored on numerous occasions."). *Id.* at 2009 U.S. Dist. LEXIS 50008 at *14.

In *Witteman v. Wis. Bell, Inc.* the Western District of Wisconsin examined similar arguments regarding individual issues at the conditional certification stage. 2010 U.S. Dist. LEXIS 8845 (W.D. Wis. 2010). In that case, quoting the Court's previous decision in *Austin v. CUNA Mutual Insurance Society*, 232 F.R.D. 601, 606 (W.D. Wis. 2006), the Court found that:

> The possibility of a fact-intensive inquiry into whether all members of the putative opt-in class are in fact similarly-situated does not preclude authorizing notice, although the need for such an analysis might weigh against or defeat certification of an actual class (or influence the form of any eventual certified class) <u>at the second stage</u>.

*Witteman*, 2010 U.S. Dist. LEXIS 8845 at *7 (emphasis added). The Court stated that "[i]f simply identifying differences between the parties were enough to defeat a motion for class certification, it would be impossible for any lawsuit to proceed as a class. . . . [Defendant must explain why] these differences are relevant for the purpose of maintaining a class or a collective action." *Id. (quoting Spoerle v. Kraft Foods Global, Inc.,* 253 F.R.D. 434, 439-40 (W.D. Wis. 2008)).

Plaintiffs and members of the putative classes they seek to represent worked in the same positions and all were classified as FLSA non-exempt. All housekeepers and certified nursing assistants worked at the same facility and were subject to an identical automatic meal period deduction policy. The Plaintiffs claim they worked during meal periods which were not cancelled, and which remained unpaid. They allege that Defendants' common practice of automatically deducting meal periods for all housekeepers and certified nursing assistants caused them and members of the putative classes to perform work hours for which they received no compensation. This is the common violation of the FLSA the Named Plaintiffs contend bind them and the members of the putative class.

Defendants' meal period cancellation evidence, none of which was presented to the Plaintiffs through discovery prior to Defendants' response to the instant motion, suggests that

13

some individuals were suffered and permitted to work more hours off the clock than others. This evidence does not refute Plaintiffs' allegations that housekeepers and certified nursing assistants worked off the clock. For example, the cancelled deduction report appears to show that in the 4NW Department, where Plaintiff Nunez worked during the relevant statutory period, employees cancelled between 3 and 350 meal periods.[7] (dkt. #39-8, Declaration of Angela Greenhill, ¶10, Ex. A). Assuming similar job duties[8] and interruptions, for the sake of argument, the individual that cancelled a meal period three times is clearly being suffered and permitted to perform uncompensated work for Defendant during most of his meal periods. Further, the individual who has to go to the trouble of cancelling his or her meal periods 350 times reveals a glaring issue with Defendants' pay policy; why automatically deduct these meal periods if it causes the employee to have to affirmatively act to avoid working without pay on a nearly daily basis? Under such a policy, a housekeeper or certified nursing assistant is bound to work through meal periods without cancelling them.

These variations in damages do not weigh against conditionally certifying the class. *Brabazon*, U.S. Dist. LEXIS 37057, at *10 (E.D. Wis. 2011)(finding that "simply because some security officers conceded they were "sometimes interrupted" instead of "frequently interrupted" does not mean that Mr. Brabazon has failed to demonstrate that he and the putative plaintiffs together were the victims of a common policy or plan that potentially runs afoul of the FLSA.").[9]

---

[7] Significantly, Defendant has not identified these individuals by name or job title so Plaintiffs have not had the opportunity to depose them, nor have they been provided the opportunity to opt-in to the case.
[8] The 4NW Department consists of many different types of employees, not all of whom are putative class members. Defendants do not identify which, if any, of the individuals identified in this report are even class members.
[9] *See also Shakib v. Back Bay Rest. Group, Inc.*, 2011 U.S. Dist. LEXIS 124143, *10-11 (D. N.J. 2011) (Rejecting Defendant's argument that actual payment of some overtime by a defendant for some hours makes it likely that claims will require specific, individualized proof as to hours that the defendant refused to pay, finding these damages issues going to the merits of the case and inapplicable at conditional certification); *White v. Osmose, Inc.,* 204 F. Supp. 2d 1309, 1318 (M.D. Ala., 2002) ("Because [Defendant] did in fact pay some overtime, it is likely that any particular claim will require specific, individualized proof as to any hours that Osmose refused to pay. Whether individualized proof will be required as to Osmose's liability for each employee's claim, as opposed to damages, is an open question properly addressed at a later stage in the proceedings, such as on a motion for decertification.); *Clarke*

While Defendants' evidence of the frequency at which different employees cancelled meal periods may be relevant to the Court's analysis at decertification, it does not stand in the way of conditional certification. Indeed, this evidence further supports that housekeepers and CNAs were commonly subject to a policy which caused them to perform uncompensated work. Individual variations in the amount of uncompensated work performed does defeat that showing.

### III. The Plaintiffs' Proposed Notice is Appropriate.

Defendants have nine objections to Plaintiffs' proposed notice. Plaintiffs agree to make five of Defendants' requested edits outright, each of which are made on the attached revised proposed Notice. Additionally, Plaintiffs have provided compromise language for the other four of Defendants' suggested changes. Specifically, Plaintiffs include a more detailed explanation of Defendants' positions, advise that individuals are able to obtain counsel other than class counsel to file their own lawsuit[10] and include the fact that the case is *conditionally* certified.[11] Plaintiffs also agree to provide additional information under the heading "Effect of Joining or Not Joining this Lawsuit."[12] A redline copy and a clean copy of the revised proposed Notice is attached as Exhibit 1 to Murshid's Dec., ¶10.

---

*v. Convergys Customer Mgmt. Group*, Inc., 370 F. Supp. 2d 601, 606 (S.D. Tex. 2005) (rejecting argument that the inherently individualized nature of damages in off-the-clock overtime claims make them unfit for collective treatment).

[10] *See Witteman v. Wis. Bell, Inc.,* 2010 U.S. Dist. LEXIS 8845, 8-9 (W.D. Wis. Feb. 2, 2010)([D]efendant says that the notice fails to explain that potential class members have the right to obtain their own lawyer and file a separate lawsuit. I agree. Although plaintiffs point to the statement, "[i]f you do not wish to join this action, you are free to take any action on your own," the phrase "take any action" is ambiguous. Accordingly, plaintiffs should replace that sentence with: "If you do not wish to join this action, you are free to retain your own counsel independently and file your own individual lawsuit.") *Id.*

[11] Plaintiffs use the exact language from *Heckler v. DK Funding, LLC*, 502 F. Supp. 2d 777, 781 (N.D. Ill 2007), which Defendant cites in support of this amendment. The Court states "The Court agrees that the notice must specify that the Court has *conditionally* approved the collective action […]." *Id.*

[12] *See Williams v. Cargill Meat Solutions Corp.*, 2010 U.S. Dist. LEXIS 72025, *5 (E.D. Wis. 2010) (reasoning that courts should not permit notice to chill a collective action in denying the defendant's assertion that notice should inform potential plaintiff's of the negative consequences of opting in, such as participating in discovery and possibly being liable for defendant's cost)(*citing Herrera v. Unified Mgmt Corp.*, No. 99-C-5004, 2000 U.S. Dist. Lexis 12406, at *6-7 (N.D. Ill. 2000) ; *See also Witteman v. Wis. Bell, Inc.,* 2010 U.S. Dist. LEXIS 8845, at *9.

15

### IV. Plaintiffs Object to the Use of a Third-Party Administrator.

Plaintiffs object to the use of a third-party administrator on the grounds that it would be unnecessary, costly and inefficient. Generally, the contact information for potential opt-in plaintiffs is provided directly to plaintiffs for the dissemination of notice and Defendants have not provided any reasonable basis for departing from this standard. *See Sharpe*, 2010 U.S. Dist. LEXIS at *20-21 (W.D. Wis. 2010) (granting potential opt-ins contact information to be provided directly to plaintiff's counsel); *See also Espenscheid v. DirectStat USA, LLC*, 2010 U.S. Dist. LEXIS 55578, *43 (W.D. Wis. 2010) (concluding it reasonable to directly provide plaintiff's counsel with potential opt-in's information for investigative and fact finding purposes).[13]

### CONCLUSION

The Plaintiffs have presented evidence which exceeds the standard applied by this Court for conditional class certification. The Plaintiffs, like members of the putative class, were subject to a meal period deduction policy under which they were suffered and permitted to perform off the clock work. As such, Plaintiffs request that the Court authorize the Plaintiff to send Notice to the putative class members in the form previously submitted to the Court, subject to Defendant's proposed alteration.

Dated: June 9, 2014
                                         **HAWKS QUINDEL, S.C.**

                                        By:     *s/ Summer H. Murshid*
                                                            Summer H. Murshid, SBN 1075404
                                                            smurshid@hq-law.com
                                                            Larry A. Johnson, SBN 1056619
                                                            ljohnson@hq-law.com
                                                            P.O. Box 442,
                                                            Milwaukee, WI 53201-0442
                                                            Telephone: (414) 271-8650

---

[13] Furthermore, Defendants' claims regarding privacy have been rejected by Courts in this Circuit. *Nehmelman v. Penn Nat'l Gaming, Inc.*, 822 F. Supp. 2d 745, 767 (N.D. Ill. 2011)(*citing Acevedo v. Ace Coffee Bar, Inc.,* 248 F.R.D. 550 (N.D. Ill. 2008), wherein, even before the Plaintiff had moved for conditional certification, the Court held that "[d]ue process requires an opportunity to discover this information at the present stage of litigation, and such due process rights are more compelling than the privacy rights of potential plaintiffs' addresses and phone numbers." *Id.*)).