# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**EVANGELINA AGUILERA and
ANGELINA NUNEZ, individually
and on behalf of all others similarly situated,**
       **Plaintiffs,**

    v.                                                     Case No. 13-C-1245

**WAUKESHA MEMORIAL HOSPITAL, INC.,
et al.,**
       **Defendants.**

---

## DECISION AND ORDER

This is a wage-and-hour case alleging that Waukesha Memorial Hospital failed to pay certified nursing assistants ("CNAs") and housekeepers for time they spent working during meal periods. Before me now are the plaintiffs' motion to certify state-law classes under Federal Rule of Civil Procedure 23 and the defendants' motion to decertify a collective action that I previously conditionally certified under the federal Fair Labor Standards Act ("FLSA").

## I. BACKGROUND

Waukesha Memorial pays its CNAs and housekeepers on an hourly basis and requires them to use a computerized timekeeping system. Employees "swipe in" at the beginning of a shift and "swipe out" at the end. If a shift will last longer than six hours, the employee is supposed to receive a thirty-minute, unpaid meal period. Under Waukesha Memorial's written timekeeping policy, an employee who intends to remain on hospital premises during his or her meal period does not need to swipe out at the beginning of the meal period and back in at the end; rather, the timekeeping system will automatically

deduct thirty minutes from the employee's shift. However, if the employee intends to leave the hospital during the meal period, the employee must swipe out and back in. Under the written policy, "[i]f a meal break is not taken or the employee stays on campus and takes less than a 30 minute meal break," the employee must use the "cancel lunch" function of the timekeeping system to indicate that the employee did not take a full meal period and therefore should not have thirty minutes deducted from his or her compensable time. ECF No. 36-5 at WMH125. If the employee works during his or her lunch and does not use the "cancel lunch" function, the timekeeping system will still subtract thirty minutes from the employee's shift.

The plaintiffs' claims in this suit relate to their use of communication devices during meal periods. Plaintiff Angelina Nunez was formerly employed as a CNA at Waukesha Memorial, and plaintiff Evangelina Aguilera is currently a housekeeper at Waukesha Memorial. Nunez carried a wireless phone at all times during her shift, including during meal periods. Nunez Decl. ¶ 5, ECF No. 34. Aguilera carries a pager at all times during her shift, including during meal periods. Aguilera Decl. ¶ 9, 18, ECF No. 79. Both Nunez and Aguilera state that Waukesha Memorial required them to monitor their communication devices during their meal periods. They further state that they were "frequently" interrupted by calls on their devices during their meal periods and "often" had to leave their meal periods to perform work in response to those calls. Nunez Decl. ¶ 7, ECF No. 34; Aguilera Decl. ¶ 7, ECF No. 33. Nunez states that her supervisor told her that she was not supposed to cancel her lunch on the timekeeping system when her lunch was interrupted by phone calls or when she was asked to perform work during her meal period; as a result, she rarely, if ever, cancelled her lunch when she worked or was interrupted during her meal

2

Case 2:13-cv-01245-LA   Filed 06/18/15   Page 2 of 18   Document 113

periods and thus was not paid for those meal periods. Nunez Dec. ¶ 15, ECF No. 34. Aguilera does not state that her supervisor told her not to use the cancel-lunch function when she was interrupted during a meal period, but she states that she "understood" that Waukesha Memorial would not pay her if she performed work or answered calls to her pager during a meal period. Aguilera Decl. ¶ 15, ECF No. 33.

Nunez and Aguilera also state that they understood that they could not leave Waukesha Memorial's premises during their meal periods. Aguilera states that she inferred that she cold not leave the premises from her supervisor's instructions that (a) she could not take her pager off of Waukesha Memorial's premises and (b) she had to carry her pager at all times. Aguilera Decl. ¶ 27–29, ECF No. 79. Nunez states that "Waukesha Memorial required [her] to stay on its premises during [her] meal breaks." Nunez Decl. ¶ 11, ECF No. 34. Nunez does not identify how this requirement was communicated to her, such as through a supervisor or a written policy.

The named plaintiffs claim that because they carried, monitored, and responded to calls during their meal periods, and because they were not free to leave Waukesha Memorial's premises during their meal periods, they were entitled to have their meal periods treated as compensable time under the FLSA and Wisconsin's wage-and-hour law. They seek back pay for the meal periods in which they were interrupted and/or could not leave the premises, including overtime wages for the weeks in which treating meal periods as compensable time would result in their having worked more than forty hours.

The named plaintiffs believe that all CNAs and housekeepers at Waukesha Memorial are required to carry and respond to communication devices during their meal periods, and that because communication devices may not be taken off of hospital

3

premises, none of them are free to leave the premises during their meal periods. Nunez thus seeks to represent a class defined to include all CNAs who worked at Waukesha Memorial at any time since February 13, 2012, and were not paid for meal periods during which they carried, monitored, and/or answered a hospital-based wireless phone. Mot. to Certify Class ¶ 1. Likewise, Aguilera seeks to represent a class defined to include all housekeepers who worked at Waukesha Memorial at any time since November 5, 2011, and were not paid for meal periods during which they carried, monitored, and/or answered a hospital-based communication device. Id. There are 443 CNAs and 136 housekeepers that worked at Waukesha Memorial at some time since the starting dates of the class periods. Assuming that all of these CNAs and housekeepers carried, monitored, and/or answered hospital-based communication devices during a meal period at some point during their employment and were not paid for those meal periods, the combined classes would encompass at least 579 members.[1]

The proposed classes would, if certified, advance only state-law claims for back pay. With respect to the federal FLSA claims, I have already conditionally certified a "collective action." See 29 U.S.C. § 216(b). Twenty-four housekeepers and CNAs have opted in to the collective action, which brings the total number of FLSA plaintiffs to twenty-six.

At the present stage of the case, the named plaintiffs have moved for class certification under Federal Rule of Civil Procedure 23(b)(3) in connection with their state-law claims. The defendants—Waukesha Memorial and its parent, ProHealth Care, Inc.—have moved to decertify the FLSA collective action. I consider these motions below.

---

[1] Presumably, because the class periods have no ending dates, additional class members would be added as Waukesha Memorial hires new CNAs and housekeepers.
4

Case 2:13-cv-01245-LA   Filed 06/18/15   Page 4 of 18   Document 113

## II. MOTION TO CERTIFY STATE-LAW CLASSES

A district court may certify a class of plaintiffs if the proposed class satisfies all four requirements of Federal Rule of Civil Procedure 23(a)—numerosity, commonality, typicality, and adequacy of representation—and any one of the conditions of Rule 23(b). Oshana v. Coca-Cola Co., 472 F.3d 506, 513 (7th Cir. 2006). The plaintiff must also show that the class is ascertainable. Id. When certification is sought under Rule 23(b)(3), as it is here, proponents of the class must also show: (1) that the questions of law or fact common to the members of the proposed class predominate over questions affecting only individual class members; and (2) that a class action is superior to other available methods of resolving the controversy. Messner v. Northshore Univ. Health System, 669 F.3d 802, 811 (7th Cir. 2012).

In the present case, there is no dispute that the numerosity and adequacy-of-representation requirements have been satisfied. Whether classes may be certified turns on whether the proposed classes satisfy the commonality and typicality requirements and the requirements of Rule 23(b)(3). Moreover, because commonality and typicality tend to be related, see General Telephone Co. v. Falcon, 457 U.S. 147, 157–158, n. 13 (1982), and because in this case both requirements are disputed for substantially the same reasons, I will not separately discuss the typicality requirement.

**A.     Commonality**

Rule 23(a) requires a plaintiff seeking class certification to show that "there are questions of law or fact common to the class." The Supreme Court has interpreted this requirement to mean that the claims of the proposed class must depend on a common

5

contention that is "of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." Wal-Mart Stores, Inc. v. Dukes, __ U.S. __, 131 S. Ct. 2541, 2551 (2011). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." Id. (internal quotation marks omitted).

In the present case, the plaintiffs' claims arise under Wisconsin Statute § 109.03(1), which requires an employer to timely pay all required wages to its employees. But the focus of the plaintiffs' claims is on an administrative regulation promulgated by the Wisconsin Department of Workforce Development ("DWD") that explains when meal periods are compensable:

> The employer shall pay all employees for on-duty meal periods, which are to be counted as work time. An on-duty meal period is a meal period where the employer does not provide at least 30 minutes free from work. Any meal period where the employee is not free to leave the premises of the employer will also be considered an on-duty meal period.

Wis. Admin. Code § DWD 274.02(3). The plaintiffs contend that Waukesha Memorial violated this regulation by allowing or requiring CNAs and housekeepers to "carry, monitor, and/or respond" to communication devices during their meal periods—which the plaintiffs contend constituted "work"—without using the cancel-lunch function of the timekeeping system. The plaintiffs also contend that because CNAs and housekeepers were required to carry devices during their meal periods, and because such devices could not leave the hospital's premises, CNAs and housekeepers were not free to leave the hospital's

6

premises during their meal periods and therefore should have been considered on duty during that time.

The plaintiffs contend that the above claims present two common questions: (1) whether carrying, monitoring, or answering communication devices during unpaid meal periods constitute "work" within the meaning of the DWD regulation, and (2) whether members of the classes were free to leave the hospital's premises during their meal periods.[2]  See Br. in Supp. at 25, ECF No. 92.

### 1. Whether use of communication devices during meal periods presents a common question

The plaintiffs' first proposed common question is whether carrying, monitoring, or answering communication devices during unpaid meal periods constitutes "work" within the meaning of the DWD regulation.  However, this question cannot be answered for the entire class in one stroke.  The problem is that the phrase "carrying, monitoring, or answering communication devices" describes a wide spectrum of activities, some of which might be

---

[2]In their briefs, the plaintiffs seem to allude to a third common question.  They point to instances in which a housekeeper logged out of the hospital's "EPIC" computer system (which is used to assign tasks to housekeepers) for a meal period and then logged back in before thirty minutes had expired.  In these instances, Waukesha Memorial still automatically deducted a full thirty minutes from the housekeeper's compensable time.  The plaintiffs seem to suggest that whether the automatic deductions were proper in these instances presents a common question of law or fact.  See Pls. Br. at 22, ECF No. 92.  However, I can find evidence of only four instances in which housekeepers were logged out of EPIC for meal periods lasting less than thirty minutes.  See Caballero Dep. at 113–14, ECF No. 87-3.  Moreover, the housekeeper class is defined in terms of communication-device usage, not in terms of the duration of a meal period as reflected in the EPIC system.  Thus, whether housekeepers who logged out of EPIC for less than thirty minutes should have been compensated for their meal periods is not a question of law that is common to the housekeeper class as defined in this case.  If there were evidence that a large number of housekeepers had logged out for meal periods lasting less than thirty minutes, then perhaps a suitable proposed class could be defined.  But on the present record, it appears that such a proposed class would not satisfy the numerosity requirement.

7

work and some of which might not. On one end of the spectrum is an employee who simply carries a device during a meal period but receives no calls or ignores any calls he or she receives; at the other end is an employee who monitors her device, is constantly interrupted by calls, and is frequently asked to leave her meal period to perform a task such as assisting a patient or making a bed. In between are employees whose experiences include things like receiving a call but forwarding it to another employee who is on duty, receiving a call and responding by doing no more than informing the caller that the employee is on break, receiving a call and answering a work-related question, and receiving a call and then performing a task—all of which could happen with varying frequency.

Waukesha Memorial did not adopt any hospital-wide policies that resulted in proposed class members using their communication devices in roughly the same manner, such that the jury could simply assess whether the policy resulted in all class members performing work during meal periods. Rather, the evidence in this case shows that different practices arose in the various departments of the hospital and across different shifts. For example, some CNAs are not required to monitor their phones at all during their meal periods or may forward their calls to someone who is on duty. Fiebelkorn Dep. at 31–33, 35, ECF No. 69-22; Flottum-Zurcher Dep. at 124, ECF No. 69-24; Brochtrup Dep. at 43, ECF No. 69-25; Greeson Dep. at 47, 97, ECF No. 69-23; Reish Dep. at 78–79, ECF No. 69-21. Indeed, one of the opt-in plaintiffs testified that she would ignore any calls she received while on lunch. Zimmerman Dep. at 35–36, ECF No. 69-18.[3] Some CNAs will

---

[3]The plaintiffs point out that Zimmerman was employed by Waukesha Memorial for only two months, and not until after this lawsuit was filed. Reply Br. at 12. However,

8

Case 2:13-cv-01245-LA   Filed 06/18/15   Page 8 of 18   Document 113

answer a call but do no more than inform the caller that he or she is on break. Fiebelkorn Dep. at 32–33, ECF No. 69-22. Other CNAs will answer a call and then contact someone who is on duty and ask that person to address the caller's need. Reish Dep. at 79–80, ECF No. 69-21. In some units, steps are taken to minimize the number of calls a CNA might receive on a meal period. For example, some CNAs will "round" with their patients before taking a meal period so that the patient will not need to contact the CNA during the meal period. Olstad Dep. at 89; ECF No. 69-20. Some units will schedule CNAs with overlapping shifts to provide coverage for meal breaks, which minimizes calls to those who are on break. Flottum-Zurcher Dep. at 104; ECF No. 69-24. Some CNAs will notify their nurses that they are taking a meal period, which tends to prevent nurses from calling a CNA during a meal period. Reish Dep. at 39–40, ECF No. 69-21. Other CNAs, such as Nunez and some opt-in plaintiffs, were frequently interrupted during meal periods and often did not even receive enough free time to finish eating a meal. E.g. Sheehan Decl. ¶ 22, ECF No. 71.

With respect to housekeepers, there is evidence that some have never been contacted during a meal period. Brown Decl., ECF No. 99; Gateris Decl., ECF No. 100; Heling Decl., ECF No. 101; Ortega Decl., ECF No.102; Smith Decl., ECF No. 103.[4] The

---

Zimmerman falls within the class definition, and thus her experiences are relevant to whether variation within the proposed class defeats commonality.

[4]The plaintiffs contend that these declarations are questionable and note that one of the five declarants later recanted her testimony. See Reply Br. at 11. However, this only highlights the individualized nature of the proposed class's claims: to determine if or how often an individual housekeeper was interrupted, the jury will likely need to hear testimony from that housekeeper and decide whether or not to believe it; the plaintiffs will not be able to use common or representative proof to establish the experiences of all housekeepers.

evidence also shows that supervisors have different practices with respect to contacting a housekeeper during a meal period. Some supervisors expect housekeepers to monitor their communication devices during meal periods, e.g., Velazquez Dep. at 48, ECF No. 69-30, while other supervisors allow housekeepers to ignore any pages they receive during meal periods, e.g., Kraatz Dep. at 46, ECF No. 69-29. The extent and frequency of interruptions will also vary by shift and department. For example, there will be fewer occasions to page a housekeeper working the night shift cleaning vacant offices than to page a housekeeper working a day shift in a patient unit. Tabatabaie Dep. at 154., ECF No. 69-32.

In light of the differing circumstances experienced by CNAs and housekeepers,[5] there is no single answer to the question of whether the use of communication devices during meal periods constitutes "work." To resolve the claims of every CNA and housekeeper, the jury would have to perform separate inquiries into the facts applicable

---

[5] I note that if one looks at the testimony of Waukesha Memorial's Rule 30(b)(6) witnesses, rather than at the evidence I have described in the text (which consists primarily of testimony from various CNA and housekeeper supervisors), the use of communication devices during meal periods appears to be somewhat more uniform than I have indicated. For instance, Waukesha Memorial's CNA 30(b)(6) witness testified that all CNAs must answer their phones during meal periods, Smeaton Dep. at 47, ECF No. 36-16, which conflicts with the testimony of some CNA supervisors, who stated that their CNAs may ignore calls they receive during meal periods. Similarly, Waukesha Memorial's housekeeper 30(b)(6) witness testified that all housekeepers must answer pages they receive during their meal breaks, Thornburg Dep. at 83, ECF No. 36-6, while at least one supervisor testified that his housekeepers may ignore pages during meal periods, Kraatz Dep. at 46, ECF No. 69-29. However, Rule 30(b)(6) testimony is not tantamount to a judicial admission by the corporation, and thus the corporation may rely on other evidence that contradicts such testimony. Al Credit Corp. v. Legion Ins. Co., 265 F.3d 630, 637 (7th Cir. 2001). In the present case, when the evidence is viewed as a whole, the use of communication devices during meal periods appears to be more varied than the Rule 30(b)(6) depositions would suggest.

to each employee and determine (a) how that employee used his or her communication device during meal periods, and (b) whether such use qualified as work. After performing these separate inquiries, the jury might decide that most class members performed work during a meal period. But if so, it would not have reached that result in one stroke. Thus, whether the proposed class's use of communication devices qualified as work is not a common question of law or fact.[6]

### 2. Whether the plaintiffs' "leave the premises" theory presents a common question

The plaintiffs' other proposed common question is whether CNAs and housekeepers are free to leave Waukesha Memorial's premises during their meal periods. Waukesha Memorial does not have a written policy stating that CNAs and housekeepers are prohibited from leaving hospital premises during their meal periods.[7] To the contrary, Waukesha Memorial's timekeeping policies contemplate that employees may leave the premises during meal periods so long as they swipe out. See ECF No. 36-5 at

---

[6]In their reply brief, the plaintiffs propose another common question of law or fact: whether the availability of the "cancel lunch" function "shields Waukesha Memorial from liability." Reply Br. at 6. However, I do not understand Waukesha Memorial to be arguing that the mere availability of the cancel-lunch function relieves it from liability for any instances in which an employee worked during a meal period and did not cancel his or her lunch. Thus, whether or not this is a common question is irrelevant. In any event, even if it were a common question, the separate inquiries into how each class member actually used his or her communication device during meal periods would raise individualized issues that predominated over the common question. See Fed. R. Civ. P. 23(b)(3).

[7]The plaintiffs note that Waukesha Memorial has a written policy stating that CNAs and housekeepers are expected to "report to work at the start of their scheduled shift and remain at work until the conclusion of the shift." ECF No. 87-5 at WMH2901. They seem to imply that the meaning of this policy is that employees are prohibited from leaving hospital premises at any time during their shifts, including during meal periods. However, there is no evidence that anyone at Waukesha Memorial interprets the policy as prohibiting employees from leaving hospital premises during their meal periods.

11

WMH124–25. However, some CNAs and housekeepers—namely, Aguilera, and some of the opt-in plaintiffs—state that because they were required to monitor their communication devices during meal periods, and because hospital-issued communication devices do not work off of hospital premises, they were, as a practical matter, required to stay on hospital premises during meal periods.[8] In other words, these CNAs and housekeepers claim that the requirement to monitor communication devices during meal periods was also an implicit requirement to remain on hospital premises during meal periods. Based on this evidence, the plaintiffs argue that whether CNAs and housekeepers were free to leave hospital premises during their meal periods is a common question of law or fact.

Again, however, the evidence does not show that all CNAs and housekeepers were subject to the same policies and practices concerning the use of communication devices during meal periods. With respect to housekeepers, one supervisor testified that her employees had the option of leaving their communication devices at the hospital if they wanted to leave for lunch. Tabatabaie Dep. at 94–100, ECF No. 69-31. Another supervisor testified that housekeepers may take their pagers off of hospital premises during their meal periods. Velazquez Dep. at 51–52, ECF No. 51–52. A third supervisor, Adriana Caballero, testified that she has told housekeepers that they may leave hospital premises during their meal periods and described specific instances in which housekeepers left hospital premises during their meal periods. Caballero Dep. at 87–91. In one instance, a housekeeper swiped out to make a trip to the bank. Id. at 88-889 Other

---

[8]Named plaintiff Nunez also claims that she was required to remain on hospital premises during meal periods, but she does not explain how she came to the conclusion that she could not leave.

12

housekeepers, including Caballero herself before she became a supervisor, left hospital premises to pick up children. Id. at 87–88, 90–91. With respect to CNAs, some are allowed to turn their phones off or to hand their phones to someone else while they leave the premises during their meal periods. See Olstad Dep. at 59–60, ECF No. 69-20; Flottum-Zurcher Dep. at 54–55; ECF No. 69-24; Cacciotti Dep. at 80–81, ECF No. 69-28[9]; Brochtrup Dep. at 39–40, ECF No. 69-25. And some supervisors described specific instances in which CNAs were able to leave the premises during their meal periods. One supervisor identified a CNA who leaves during her meal periods to take care of her dog. Reish Dep. at 43–44, ECF No. 69-21. Another supervisor identified a CNA who left during her lunch to go home and breast feed her child. Bohlman Dep. at 75, ECF No. 75. One CNA testified at her deposition that she did not believe that she was prohibited from leaving hospital premises during her meal periods. Zimmerman Dep. at 42, ECF No. 69-18.

To be sure, the evidence suggests that CNAs and housekeepers rarely leave hospital premises during their meal periods. But this does not prove that there is a common policy or practice that applies to all CNAs and housekeepers that <u>prohibits</u> them from leaving. There are many reasons why an individual CNA or housekeeper might want to remain on hospital premises during a meal period. Thirty minutes may not be enough time to make leaving the hospital worthwhile. Also, the hospital likely has break rooms and a cafeteria, and it might be more convenient to spend the meal period at the hospital than

---

[9]The plaintiffs note that Cacciotti's testimony about a "break buddy" system that enables CNAs to hand their phones to other CNAs during meal periods was not instituted until after this lawsuit was filed. However, the proposed classes do not have definite ending dates, and thus practices adopted after the lawsuit was filed are relevant to whether the requirements for class certification have been satisfied.

13

at an outside restaurant. To determine whether a CNA or housekeeper who remained on hospital premises did so by choice or because he or she was required to monitor a communication device, the jury will need to consider the individual circumstances applicable to that CNA or housekeeper.

Thus, the plaintiffs have not shown that there is a single answer to the question of whether housekeepers and CNAs were free to leave the premises during their meal periods. Some might have been required to remain on campus, and others might have been free to leave. Individualized inquiries will be needed to identify the policies or practices that applied to each employee, and therefore "whether CNAs and housekeepers were free to leave the premises during their meal periods" is not a common question of law or fact.

### B. Rule 23(b)(3) Requirements

Because the plaintiffs have not satisfied the commonality requirement, their claims cannot proceed on a class basis, and thus I will not separately consider whether they have shown that the Rule 23(b)(3) requirements are satisfied.

### III. MOTION TO DECERTIFY COLLECTIVE ACTION

As noted, I previously conditionally certified a collective action of housekeepers and CNAs at Waukesha Memorial. Although I certified separate classes of housekeepers and CNAs, the class definition for each class is the same, namely:

> All persons who have worked for Waukesha Memorial at any time since May 9, 2011 as [a CNA or a housekeeper] and who have been denied pay during unpaid meal periods, despite being required to monitor a phone, pager, and/or walkie-talkie or having had their unpaid meal period interrupted by work without compensation.

14

Twenty-four members of the above class have opted into the suit.[10] Including the two named plaintiffs, the total number of housekeepers and CNAs pursuing relief is twenty-six. Their claims under the FLSA are based on a regulation promulgated by the Department of Labor that defines non-compensable meal periods. See 29 C.F.R. § 785.19. Similar to the state-law claims, the FLSA plaintiffs allege that they were required to carry, monitor, and/or respond to communication devices during their meal periods, and that therefore their meal periods constituted compensable time. The defendants move to decertify the collective action on the ground that the opt-in plaintiffs are not "similarly situated," which they must be in order to proceed collectively. See 29 U.S.C. § 216(b).

Seventeen of the twenty-six plaintiffs have submitted declarations in which they describe the extent to which they were required to use communication devices during their meal periods.[11] And from a review of these declarations, it appears that at least these seventeen plaintiffs are similarly situated—they each state that they were required to monitor their communication devices during meal periods and were interrupted so frequently that they often did not have enough time to finish eating. These seventeen plaintiffs also state that they were told that they could not remove their communication devices from hospital premises, and that they understood this to mean that they were

---

[10] It is not clear how many of these twenty-four opt-ins are housekeepers and how many are CNAs. In their opening brief, the defendants stated that twenty-five of the opt-ins were CNAs and six were housekeepers. Br. at 1. However, since the date on which the defendants filed their brief, five opt-ins have withdrawn from the suit. The opt-out forms do not identify whether the person opting out is a CNA or a housekeeper.

[11] These plaintiffs are named plaintiffs Nunez and Aguilera and the following opt-in plaintiffs: Price, Cramer, Savoie, Gonzalez, Sheehan, Morgan, Kaucic, Knapp, Ferris, White, Shirley, Saucerman, Ocasio, Kish, and Marks.

15

required to remain on campus during their meal periods. In contrast, one of the opt-in plaintiffs, Amberly Zimmerman, testified at her deposition that she rarely received calls during meal periods and ignored any of the calls she did receive. Zimmerman Dep. at 35–36, ECF No. 69-18. She also testified that she did not think she was prohibited from leaving hospital premises during her meal periods. Id. at 42. As for the remaining eight plaintiffs, there is no evidence in the record concerning their experiences.

Although seventeen of the plaintiffs appear to be similarly situated, I cannot identify any common question of law or fact that applies to all twenty-six plaintiffs. Although the question of whether the seventeen plaintiffs who experienced frequent interruptions received bona fide meal periods may be common to them, the question does not apply to Zimmerman, who did not monitor her device or answer any calls during meal periods. Because I do not know anything about the experiences of the remaining eight plaintiffs, I do not know whether their claims will involve any questions that are common to the claims of the other plaintiffs.

As discussed in the context of the plaintiffs' motion for class certification, there is no hospital-wide policy that dictates how or how often a housekeeper or CNA must use his or her communication device during a meal period. Such usage seems to vary based on shift, department, and supervisor. There is thus a fundamental problem with proceeding with a collective (or class) action in this case: there is simply no way to resolve the claims of each class member without independently establishing the facts that apply to that plaintiff and then determining whether his or her use of a communication device during a meal period qualified as work. To put the problem differently, there is no way to resolve the class's claims on a representative basis. The jury could not hear evidence concerning

16

the experiences of the named plaintiffs, decide whether or not they performed work during their meal periods, and then extrapolate to reach conclusions about the rest of the class. Even if the experiences of some of the other class members were similar to the experiences of the named plaintiffs, such that the jury needed to answer the question of whether how they used their communication devices during meal periods qualified as work only once, at the very least the other class members would need to testify to establish that they used their communication devices in the same way as the named plaintiffs. And almost certainly every class member will have had at least slightly different experiences, which means that the jury will likely need to separately determine for each class member whether his or her use of a communication device during a meal period qualified as work. Thus, this case cannot proceed as a collective action.

My conclusion that this case cannot proceed as a collective action does not mean that those plaintiffs who have had similar experiences cannot proceed collectively. Under Federal Rule of Civil Procedure 22(a), persons may join in one action as plaintiffs if their claims arise out of the same series of transactions or occurrences and any question of law or fact common to all plaintiffs will arise in the action. Here, the seventeen plaintiffs who allege that they experienced frequent interruptions during meal periods could join in one action. Although each plaintiff would have to independently establish the facts underlying his or her claim, all claims would involve the common question of whether, if the alleged facts were true, the plaintiffs did not receive bona fide meal periods. Thus, while I will decertify the collective action, I will grant the plaintiffs an opportunity to file an amended complaint in which all housekeepers and CNAs who claim to have used their communication devices as frequently as Aguilera and Nunez are named as plaintiffs. To

Case 2:13-cv-01245-LA   Filed 06/18/15   Page 17 of 18   Document 113

the extent that there are opt-in plaintiffs who intend to pursue individual claims but are not similarly situated to Nunez or Aguilera, they may file separate individual suits, and then those suits will be assigned to me under this court's related-case rule. See Civil L.R. 3(b) (E.D. Wis. 2010). This approach will preserve any efficiencies that would result by administering all claims together, even if the claims are not similar enough to the claims of Aguilera and Nunez to warrant joinder under Rule 22(a).

## IV. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the plaintiffs' motion for class certification is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motion to decertify the collective action is **GRANTED**.

**FINALLY, IT IS ORDERED** that a telephonic status conference will be held on **July 17, 2015 at 11:30 a.m.** for the purpose of scheduling further proceedings, including a deadline for filing an amended complaint. The court will initiate the call. Counsel should call the court with contact information.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2015.

s/ Lynn Adelman
_____
LYNN ADELMAN
District Judge